Judge Mills,
delivered the Opinion of the Court.
Andrew Crockett, holding two adjoining grants for land, brought two ejectments for an interference therewith, held by John Lashbrook, *531 under a junior grant. One of> these cjectiT. ’ ‘s was served on Lashbrook, who did not reside bn the interference, but on adjoining lands, within his own grant, and the other on Jonathan Fyffe, who cultivated some cleared land on the interference, and who, shortly after the service of the ejectment, moved over, and from thence forward resided upon, and possessed the whole interference. Lashbrook entered himself defendant in both these ejectments, and in that served on Fyffe by the following order:
Order admitting Lash-brook alone defendant, in the case against Fyffe.
Nonsuit in the case originally against Lash-brook; because ho was not in possession .
Verdict and judgment for plaintiff in the case agamst Fyffe.
Lashbrook alleges Fyffe. was in possession of but seven acres of the interference of the claims, and so, only that was recovered.
Writ of possession executed by IDimmit in the name of Crockett, for the whole interference, about sixty aereó.
*531 “On the motion of John Lashbrook, he is admit-ed defendant herein, in the stead of Richard Roe, the casual ejector, for the demised premises, in the possession of the said Jonathan Fyffe.” And then he entered into the common rule, and agreed t® insist upon the title only on the trial.
These two causes Avere tried at the same time, one .next succeeding the other, and that against Lash-brook first. lie, on the trial, being at the bar xvith his counsel, required of the lessor strict proof that he was in actual possession of any part of the interference; and after attempting to prove that he was, by sundry witnesses, the lessor of the plaintiff suffered a non suit.
The next suit, Avith notice to Fyffe as tenant in possession, Avas then tried, and a verdict was found generally, that the defendant was guilty of the trespass and ejectment in the declaration mentioned, and judgment rendered for the time yet to come, in the premises in usual form.
Commissioners were appointed to assess improvements, under tne occupying claimant laws, to whom Lashbrook showed the improvements on about seven acres only, alleging that that quantity was all that was possessed by Fyffe at the service of the declaration in ejectment, and of course, he had only lost that quantity, Avhen the Avhole interference was about sixty acres, the most of which was improved.
When the Avrit of possession emanated, Lash-brook objected to giving possession of any part except the seven acres, but Dimmit, Avho acted as the agent for Crockett, the lessor, in conducting the *532 ejectments, and who, pending the suit, had procured a conveyance of the land from Crockett, caused the writ of possession to be executed on all the interference, and the possession thereof to be delivered to him, and this has given rise to the two cases now before this court.
Action of trespass by Lashbrook aniit1SÍ üim"
Motion for restitution against Crockett-
Trial. Judgments for Lashbrook, and exceptions.
Picas of defendant; replications ; double rejoinders to the novel assignments, and issues.
Lashbrook brought his action of trespass, quarc. clausum fregit, against Dimmit, for this act.
And also instituted against Crockett, in the same court, a motion to set aside the execution of the writ of possession in part, and for a writ of rcetitution, to restore to him all that part outside of what he contended Fyffe had in possesion at the service. of the ejectment,
Divers issues were joned in the action of trespass, which will be hereafter noticed, and a trial thereupon had.
By consent of parties, the testimony given before the jury, in the action of trespass against Dimmit, was to be considered as given to the court in the motion for restitution against Crockett, and the court, after heaving this evidence, was to decide thereon, as if given for the purpose of the motion only. The jury found a verdict for the plaintiff in the action of trespass; which verdict, the court below refused to set aside, on a motion for a new trial, and rendered judgment thereon for the plaintiff, and also gave judgment against Crockett for a writ of restitution. Exceptions were taken in both cases, whereby the whole evidence, and questions of law were spread upon the record. From the judgment on motion, Crockett appealed, and Dimmit prosecuted his writ of error in the action of trespass, which are the two cases now before us.
In the action of trespass, Dimmit filed four special pleas in bar, to all of which, the plaintiff replied by novel assignment. To each of the replications to the two first pleas, the defendant, claiming the right of a defendant to an original action, to plead as many pleas as he pleased, to be restored to him by the new assignment, hied three rejoinders, thus branching these two picas to terminate in six *533 issues. To all these, surrejoinders were filed, and tiie pleadings continued, till the whole six terminated in issues of fact; except one, which was ended in an issue of law by demurrer, decided for the plaintiff. Single rejoinders were filed to the replications to the third and fourth pleas, and they terminated in two more issues of fact. We have not thought it necessary to a full understanding of the questions of law involved, to recite these ladings verbatim, but shall only state so much of tl'«iir substance as shall be indispensable. Suffice it to say, that the pleadings are generally well drav, n, and exhibit wore professional skill than is usually found in the country, under the loose and careless practice, which too much prevails. That branch of issues which terminated in a demurrer must first’be noticed, as the decision on the demurrer is attacked by the assignment of error.
Special pica of justification, alleging the defendants right of entry and judgment in ejectment, and writ of habere possessionem.
Replication by novel assignment.
The second plea alleges in substance, that the close was part of the land contained in the patent of Andrew Crockett; and that the plaintiff became possessed thereof as tenant of Crockett, and obtained possession under him, and afterwards having obtained a patent in his own name, refused to acknowledge himself the tenant of Crockett, and attorned from him, and claimed the land adversely, and thereupon Crockett brought his ejectment, and served the same with the notice on Jonathan Fyffc, who was at the time the tenant in possession, and Lashbrook, defended for him, and judgment was recovered against him in the usual form, he, said Lashbrook, being found guilty; upon which a writ of possession issued, and he, the defendant, as agent of Crockett, and as a purchaser from him, caused the writ of possession to be executed, and the possession to he delivered to himself, as well he might; and this was the same trespass in the declaration mentioned, and not other or different.
To this plea, the plaintiff replied by setting out the abuttals of his close, and excluding the land in the possession of Fyffe, at the service of the declaration in ejectment, averring that it was another and different close from that in Fyffe’s possession, and *534 recovered by the ejectment aforesaid, and that thiu new close, at the date of the service of the ejectment, was in the exclusive possession of him, tlic plaintiff, as his proper close, and so remained till the commission of the trespass in the declaration mentioned. '
.Rejoinder of liberum tenumcnlum.
Surrejoinder of twenty years adverse possession by plaintiff before defendant’s entry and trespass.
Demurrer to the surrejoinder, and judgment for the plaintiff.
Plaintiff may reply to a plea of liberum tenamentum, either by traversing the title generally, or by shewing a conveyance, or alleging an adversary possession which tolled the defendants entry.
'Held by the circuit court the pleadings had not involved the title.
*534 To this new assignment, the defendant in the third plea, rejoined, liberum tenementum, as to the close therein set forth.
The plaintiff then surrejoined, more than twenty years adverse possession in the plaintiff before the commission of the trespass in the declaration mentioned, whereby the defendant’s right of entry was tolled.
To this surrejoinder the defendant demurred, and the plaintiff joined in demurrer. The court overruled the demurrer.
It is evident, that after the new assignment by the plaintiff, the defendant, in his rejoinder, abandoned the recovery by ejectment, of the close so newly set out, and alleged title thereto.
The plaintiff might have traversed this title, and by way of avoidance, have shown, that by means of an adverse possession of twenty years, this title was destroyed. But he chose to admit the title of the defendant, as one existing, and then to show that it was taken away by adverse possession; and although this might amount to the general issue, yet he might specially reply it. For it is clear, that the adverse possession of twenty years destroys the right of entry, and confers a positive title, one on which a party may recover as plaintiff. And as a party to a plea of title may reply a conveyance, so it is competent for him to show that title has passed from his adversary, by the adverse possession. As the defendant, by demurring, chose to admit the fact, that his title was thus destroyed, it follows that the court below, did right in overruling the demurrer.
Another point made on the trial, leads us further to examine the issues. The court below decided that the title -was not in issue on the pleadings, and *535 so Instructed the jury, and rejected the title papers as evidence for that purpose. On looking into all the issues, we find that court was correct, unless that it be found, that the issue joined on the fourth plea, involves or questions the title of the parties.
It seems that where there was an agreement by the possessor under the junior grant, that if the elder patentee prevailed in an ejectment against a certain other person, ho would thenceforth hold under him, and the plaintiif did prevail in that action before the limitation had run, the . plea of continued adversary possession will not avail.
Duplicity in pleading is not now, since the destruction of the special demurrers, au available objection.
I’lea of liberum tenainentum, and of a judgment in ejectment and writ of possession thereon.
The correctness of this decision is rendered important, by an examination of the evidence. The •defendant exhibited title; the plaintiff gave evidence conducing to show an adverse possession of twenty years, and the defendant gave evidence conducing to show, that when the plaintiff entered, Crockett, the patentee, was in actual possession, and the plaintiff entered as a trespasser, and that to save himself from expulsion, he accommodated the matter with Crockett, the patentee, and agreed with him to hold the land under him contingently; that is, if Crockett recovered an adjoining piece of a neighbor, with whom he was at law, then the plaintiff was to surrender possession to Crockett, but was to keep his possession if Crockett failed against that neighbor, •and that Crockett actually succeeded against that neighbor within the twenty years previous to the .commission of the supposed trespass. Now it is evident that the decision of the court excluded from the jury the consideration of the title of Crockett, and the destruction of the effect of twenty years possession, by this supposed arrangement with regard to the possession, and might thus lead them to an erroneous finding.
The fourth pilca, and all the subsequent pleadings thereon, to the close of the issue, are not free from the charge of duplicity, a charge that is not easily taken advantage of, under our code, since the destruction of special demurrers by statute. If therefore, title is substantially involved, even in a form coupled with other valid matter, it must be regarded.
The fourth plea in its first part, is a ¡ilea of liberum tenementum, as to the close in the declaration mentioned, and then proceeds, in addition to title, to set out the judgment in ejectment and recovery of the close by Andrew Crockett, and the entry thereon by virtue of the writ of possession under Croek *536 ett, as the same trespass in the declaration mentioned.
Replication of twenty years adversary possessioa of the land described as to the libitum lena•mentum, part of defendants plea, and as to the judgment in ejectment denying the land was in ■possession of the tenant at the institution of tho ejec tment.
Surrejoinder.
Held there were issues upon one plea on both tho allegations, of liberum tenamentum, and the recovery in ejectment.
To this the plaintiff, in his replication, as to so much of the plea as relies on title, sets out by novel assignment, the abuttals of his close excluding the land in possession of Fyffe, and averring that it was different, and that the plaintiff, at the date of the trespass, had had twenty years adverse possession thereof, by which the defendant’s right of entry was tolled. And as to that part of the plea which alleges the judgment and recovery and writ of possession thereon, as land in the possession of Fyffe, he again, by novel assignment, sets out the same abuttals of his close excluding the land in possession of Fyffe, recovered by the ejectment, and averring that it was another close different from that recovered in the ejectment from Fyffe, and that it was at the date of the service of the declaration in ejectment, in the possession of the plaintiff himself, and not recovered in the ejectment aforesaid, at any time before the commission of the trespass in the declaration mentioned.
To this replication the defendant rejoined, that the close newly assigned, was his freehold, and that it was also in the possession of Fyffe, when the declaration in ejectment was served, and was recovered in the action of ejectment aforesaid.
To this the surrejoinder of the plaintiff is in substance, de injuria sua propria, absque tali causa, concluding to the country.
We cannot view this rejoinder of the defendant to the replication which newly assigns the close, as doing any thing else than alleging title to that close also, and a recovery thereof in the ejectment, and the surrejoinder completely traverses both, and denies that the defendant has title, or that he recovered it in the ejectment of Crockett; and the parties each insist on their title; the defendant by patent, and the plaintiff by twenty years adverse possession thereto; the defendant that he had regained the possession at law, and the plaintiff denying it. Now it is clear that the defendant could give in evidence *537 under this issue, his title, and was bound to do so. The plaintiff could controvert that title by proving twenty years adverse possession, and the defendant might destroy the effect of that possession, by shewing that for the whole or a part of the twenty years it was held, not adversely but by an arrangement subject to a contingency. If the defendant could establish the recovery of the land, as in the possession of Fyffe, his case was so much clearer. But if In this he failed, and still should prove title, and the plaintiff should fail to show that title barred by adverse possession, it is still clear that the defendant could, in trespass, justify an entry thereon, even without a judgment and writ of possession. In this instruction and decision the court below therefore erred.
Evidence of tho'jossef 0Í sion on which the declara-' seive
Recovery in p0ssejs¡0ri of the tenant on v-hom the declaration and notice are served, in whose stead the landlord is admitted to defend.
*537 The rest of the issues all terminate in the point whether this land or close, for a trespass on which the plaintiff has brought his action, was in the possession of Fyffe when the declaration in ejectment was served, or was recovered in the action of ejectment, and the question of fact is one much disputed in the evidence. But the principal question of law made and decided by the court, and that on which the cause essentially turned, was the following. At and before the date of the service of the declaration, the sixty acres which interferred-, was nearly all cleared and used as tillable land; but neither Fyffe nor Lashbrook lived upon it, but near to the interference and outside of it. This land was divided by division fences for the convenience of cultivation, and it is not disputed by the plaintiff, but that Fyffe occupied or cultivated one of those fields, and that the year following, (the declaration in ejectment being served on the 30th of December, 1815,) Fyffe moved . on the interference and occupied the whole, and cleared some additional land pendjng the ejectment.
The'declaration in ejectment goes for far rnpre land than is sufficient to cover the whole. On the service of the ejectment, Lashbrook defended ás landlord, without Fyffe. It was contended by the defendant in the court below, and is contended here, *538 that as the verdict and judgment is broad enough, when measured by the declaration, to cover the whole interference, it is incompetent for the plaintiff to narrow clown that recovery by proving the' possession of Fyffe much smaller; and at all events, as the defendant, or Crockett for liim, has title to the whole interference, and that Lash brook himself, who defended, held that of Fyffe, in his possession, by his tenant, and the residue of the interference in his own possession, that it gave Crockett a right to take possession of the whole, according to his title, as well that which was possessed by Fyffe, as that possessed by Lashbrook himself, as that was also in issue. On the contrary, the plaintiff'insists that the ejectment only put in issue that part in the possession of Fyffe at the date of service of the ejectment, and that more could not be recovered; that he has a right to prove that possession as small as he can, and as the twenty years adverse possession which he attempts to prove, had expired after the service of the ejectment and before the execution of the writ of possession, it gave him such title to the residue, as will enable him to sustain trespass. The court decided in favor of the plaintiff, and limited the recovery in ejectment as he contended, so that the cause was thus narrowed to the inquiry of fact, whether Fyffe possessed more at the date of service of the ejectment, than the seven acres. On this point much contradictory evidence was given, and the jury found for the plaintiff.
History of the action of ejectment.
In deciding that the lessor of the plaintiff could recover no more than what the tenant, on whom the declaration was served, had in possession at the time, we conceive the court below correct. A little attention to the history- of the action of ejectment will prove this.
It was first in reality an action by a lessee against an intruder, commenced by writ. It next became a fiction both as to lease and lessee, and was commenced by declaration and notice, and the lessor was the person really interested, and it was then used for the purpose of trying his title, or his right to make a lease. As the lessor could try title, it was *539 but mutual that the tenant should also callto'his aid, not only any title which he might have, but also the title of. another from whom he derived his possession. And as there might be negligence on the part of the tenant, or collission between him and the lessee of the plaintiff, especially after fiction, and not reality, was introduced into- the action, the tenant’s landlord was first permitted, by the courts to interpose, and that interposition was afterwards sanctioned and regulated by act of Parliament.
Landlord admitted to defend with, or in the stead of the tenant, can make nodefence which the tenant could not insist on in hi-s defence.
Admission of , the landlord to defend in, the stead of the tenant, does not extend the controversy to land in possession of the landlord, and not the tenant at the time of the service of the declaration and notice to the tenant.
But as the landlord, or one under- that name, might introduce new titles and defences, which the lossor of the plaintiff did not intend to-litigate or disturb, courts were always careful to see that- the applicant to he entered as defendant, either with or for the tenant, was really his landlord,, or that, the tenant derived his possession from him.. No other can be admitted. Nor is the landlord when admit-ed allowed to put any thing else in issue-, but title of the land in the tenant’s possession.. The meaning and extent of the privilege- allowed him- is a simple defence for the tenant’s possession, and not to bring with him into, the cause, other controversies about title between him and the lessor of the plaintiff, in which the tenant had no concern. If he could do this, he would or might greatly enlarge and embarrass the controversy, by bringing into it, titles which the lessor of the plaintiff never intended to disturb»
Now as the landlord is bound by the terms on which he gets into the cause, to shield the possession or title of the tenant only, it would be preposterous to say that his title to other lands which he could not bring into the cause should be affected or disturbed by the verdict and judgment. If that be so, then he defends not on terms of' reciprocity, but in great danger of losing his. other lands, the titles to which he is bound not to introduce. Hence we conclude that the possession of the tenant is, and must be alone, the matter of controversy.
It has been urged that as the verdict and judgment is broad enough,,in terms, to cover this whole territory and more, the defendant therein ought not *540 to be allowed to narrow it by parol proof, and that if he can, the same process of reasoning would warrant his reducing it to nothing. To this we reply, that one verdict and judgment in ejectment, tried at the time this was, is not conclusive in other actions, nor indeed in another ejectment for the same lands, and therefore its whole force or any of its parts may be controverted,
Verdict and judgment in ejectment not conclusive in another ejectment.
In an action lor the mesne profits, the verdict and judgment in ejectment arc conclusive.
Otherwise in an action by the defendant in ejectment against the plaintiff for entering on the lands by the writ of habere facias.
To the rule that a verdict and judgment in ejectment is not conclusive in another controversy, there are a few exceptions; one is, in the action of trespass for the mesne profits; and it may be urged that as the record of recovery in ejectment is conclusive in the; action of trespass brought by the lessor of the plaintiff against the tenant or defendant, so it ought to be in an action of trespass, as this is, brought by tiie defendant in ejectment against the lessor of the plaintiff. To which it may be replied, that the actions arc not alike or subject to the same rules and doctrines governing each. The action for mesno profits is an equitable action, and partakes of tho nature of the fiction existing in the ejectment itself, and may be brought in the name of the fictitious lessee. It is an appendage to the action of ejectment to enable the lessor of the plaintiff to recover the same damages, which was formerly recovered in the action of ejectment, and after the introduction of the fiction, he was allowed to take a verdict for only nominal damages, in the ejectment, and then to annex thereto his action for the mesne profits and recover the whole. Hence the fiction is extended throughout the latter action, and in order that the fiction may subserve the ends of justice, in that action also, the verdict and judgment in ejectment has been held conclusive.
But not so in this action of trespass, brought by the present defendant in ejectment. It is strictly legal, and subject to the ordinary rules which govern other actions of trespass, and the verdict and judgment therein, may conclude the rights of the parties in any other controversy.
By an attention to the ancient forms, which are held to be evidence of law, the restriction of the recov *541 ery in ejectment, to the premises in possession of the tenant on whom the ejectment was served, will be still further illustrated. By the ancient and most correct practice, if the tenant did not and the landlord was permitted to defend alone, the lessor of the plaintiff took judgment by default, against the tenant, with a stay of execution until the issue between the plaintiff and landlord was tried, If the landlord was convicted, no judgment of evic- ,. , ■ , . . , , . J ® ' n tion was rendered against him, except a recovery ot costs, and the plaintiff by order of court, took out his writ of habere facias possessionem, on the original judgment by default; by which it is evident, that nothing but the possession of the tenant by the terms of the whole proceeding, could be disturbed by the writ of possession. We know that the practice in use among us, which grew out of an erroneous and absurd departure from the ancient mode, is to omit the entry of judgment by default, against the tenant, and to proceed to convict the landlord, and render a judgment against him, not only for costs, but for the term yet to come and unexpired, and then to take out execution against him, and thereby turn out tlve tenant. And as held by this court in the case’of Banta &c. vs. Clay, 5 Litt. Rep. 129, such writ can after the defence of the landlord operate upon the possession of the tenant, so now we conceive it can only operate exclusively on his possession, and not on other possessions of the landlord.
Modo of pro-entries whore the tenant «ot, ¡-lut the landlord ¿icfemlod for him.
Motion for restltutlon-
Rmnut ani as one person in the-whole oonlrovPrsy>
The next point made in the action of trespass, arises on the weight of evidence, on the motion for a new trial. But.as the jngment, as we have already seen, must be reversed on other grounds, we shall waive that subject in the action of trespass, and reserve what we have to say thereon, till we inquire into the merits of the motion for a writ of restitution, which now occurs, and in which we act as triers of fact as well as law.
We would remark before considering the motion for restitution, that we have, and shall throughout both cases, consider Dimmit and Crockett as one person, and both of them bound by the proceedings in the whole controversy; for they appear united *542 in the same pursuit, so closely, that what is evident© against one, we conceive, was properly admitted as evidence against the other.
Motions for restitution not favored in this court.
Decision on a motion for restitution of lands, will not bar a for-ma] action at law on the same matter.
Decision on ihe evidence, for Lash-brook, and against Crockett; as to the possession of Fyfle the tenant.
Verdict in trespass is not conclusive ia a motion for restitutioh of the premises, taken possession of by-writ of habere facias.
*542 Motions for writs of restitution, when they depend entirely on facts in the country to be proved Or disproved by swearing only, have never been favored in this court; and they ought only to bf. tolerated, in cases where there is no controversy about tire facts, unless the controversy of fact is settled by some other legal proceedings, and for the best of reasons.
The decision of the court, granting restitution, cannot settle the facts or conclude the rights of the parties. They may again be contested in an action at law; of course, in doubtful cases of fact, it is better to leave the parties to an action at first, than to disturb the attitude in which they stand. Courts generally will, in a summary way, correct an abuse of their process; but when the fact becomes doubtful, whether the process has been abused or rightfully executed, it is better to leave the parties to their remedy by action, especially in a case, where none of their rights will be barred by not disturbing the process.
According to these principles, if this case is to be considered on the facts alone, without regard to the verdict which was rendered, we should have no hesitation in saying that the court below, ought to have refused its interposition, and to have let alone the execution of the process. On the fact, whether Fyfle had the possession of the whole interference, when the notice and declaration in ejectment was served upon him, the evidence is somewhat contradictory but the weight of it is decidedly in favor of Crockett. And although the conflict between the witnesses was such as might induce a court not to interfere after verdict, and grant a new trial, yet in deciding on it ourselves, we should feel ourselves constrained to decide in favor of Crockett.
The question remains, what influence the verdict in the action of trespass ought to have in settling the disputed facts. It is true the verdict, if it re *543 'ihained, would be conclusive between the parties in another suit, still we apprehend in this case, the court ought not to have interfered, and granted restitution, and that for the following reasons:
Whenever a person has the right of entry, he may justify, in trespass quare clausum fregil by the plea of liberum, lenamentum.
It seems the court will not determine a doubtful question as to the extent of boundary in a motion for restitution,butleave the party to his action.
Possession,its extent by parties in the occupancy of parts of the land in controversy.
The jury might have been and were probably misled bv the erroneous instruction given them, excluding the title of the defendant below, from their consideration, when the issue required it to be submitted; and it cannot be doubted, that the mere title of the defendant, so far as his right of entry was not tolled by lapse of time, would have shielded him from the action of trespass; even though he had entered without a judgment in ejectment or a writ of possession.
The title of Lashbrook, by possession, was somewhat doubtful to every part, owing to the evidence conducing to prove that his possession was amicable and consistent with the title of Crockett. But admitting this point to he in his favor, it is clear that he failed to prove an adverse possession of twenty years, of the whole of the land included in the abuttals set out in his pleadings, and if he proved it in a small portion only, the verdict, might have been founded on that alone. The proof is, that Crockett, by his tenants, not only had the first possession of an adjoining tract which might, according to its intention, extend to both tracts, as he had the elder patent; but he had also an actual possession within the interference, when Lashbrook first entered. By this entry Lashbrook could not have ousted him to the extent of the interference, but only to the extent of his actual close, as held by this court in the case of Miller vs. Humphries, 2 Marsh. 446. Still, as he extended his actual close, could he oust the possession of Crockett, and the evidence falls far short of showing, that he actually enclosed the whole interference, till within twenty years before the entry of Dimmit, under Crockett. The extent, then, of the land, to which, he ought to be restored was entirely uncertain, the verdict notwithstanding, and he ought to have been left to try that extent of possession by suit,
Landlord and his tenant being sued m separate actions for adjacent lands, in possession of the two, or of the tenant only; the landlord by denying his possession obtained a dismissal of the action against him, and after-wards upon a general verdict and judgment rendered in the other case, possession was taken of both parcels as recovered in this action— held thelandlord snail not have restitution of the part lie was sued for, by shelving he and not his tenant was in possession. Party may be estopped to deny what lie ■declared in had faith, whereby he obtained an advantage over his adversary.
Benial of a. defendant in ejectment that he >vas in possession, shall not conclude him in an action of trespass, because the judgment in ejectment is not conclusive.
*544 Another reason exists, for refusing the restitution required, the verdict notwithstanding. As we have said another ejectment against himself was tried when that against Fyffe was tried, in which he not. only denied any possession in himself, when the declaration and notice was served, by the plea and demand of his counsel; but be so seriously assured the counsel for Crockett, that he had not the possession, that they, believing him, gave up further attempts to prove it, and suffered a non suit, and. now his success depends on his retracting that denial, and proving it all false, by showing that he himself, and not Fyffe, had the possession of most of the interference. These different attitudes, in which he has attempted to place himself at different times in this controversy, is not only subject to the charge of immorality, but raises the legal question, bow far be is estopped in law, at this time to prove the contrary to what he at first asserted, for the very purpose of keeping this land from being recovered of him, for which he now contends.
The general principle is, that where a party acts with bad faith in the admissions ' or declarations which he has made, and has thereby induced others to act upon those declarations, and has derived a benefit to himself from it, against his adversary, he shall be bound by it, and shall not thereafter, in a controversy touching the game matter, prove it untrue. Now it is evident that Lashhrook did, by these acts and declaration, which he now says were not true, derive to himself the benefit of getting clear of a recovery of this land, against, and to the prejudice of his adversary. This has occasioned some doubt with the court, whether he ought not to be estopped to disprove the declarations in the action of trespass.
But upon more mature reflection, we are persuaded it ought not there to conclude him, but can only be given in evidence against him, to bear its ordinary weight; because by his representations he got clear of an ejectment only, a recovery in which would not have concluded either his rights or those of hjs adversary, and as the advantage which he *545 gained and his adversary lost, was not conclusive, it .would be carrying the estoppel too far, to silence him in the action of trespass, which may forever conclude the rights of both.
Declarations of a party in ejectment, made in bad faith, to the prejudice of his adversary, given their effect on a motion for restitution.
Judgment & Mandate.
Brown, Barry and Depeio, for plaintiffs; Critttenden, for defendant.
But the verdict and judgment in ejectment, as we have seen is conclusive to some purposes, and it is particularly so for all the purposes of effectuating the judgment, and this judgment was taken against Fyffe, or rather Lashbrook for Fyffe, under a conviction induced by Lashbrook, that it included the whole interference, and Lashbrook was excused by these acts and declaration. Lashbrook ought not, therefore, for the purpose of defeating the execution of the writ of possession, by his motion, to be now permitted to retract and disprove this de^ claration, whereby he injured his adversary, so soon as he thinks the right of entry is in his favor, by lapse of time. At all events this is a pursuasive circumstance which ought to induce a court to refuse a summary interposition in his favor, notwithstanding he has a verdict in trespass; but he ought to be left to other remedies to regain the possession which' he lost by the writ of possession.
The judgment in trespass, of Lashbrook against Dimmit, must be reversed with costs, and the verdict be set aside and the canse remanded for new proceedings to be had, not inconsistent with this opinion.
The judgment in the motion for restitution in the case of Crockett vs. Lashbrook, must be reversed with costs, and the case be remanded with directions to overrule the motion with costs.